UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| IN RE: Allison Brunner | : | Chapter 7 |
|---|---|---|
| | : | |
| Debtor | : | Case No.: 16-10979 |

## INITIAL BRIEF OF DEBTOR

BY: Brad J. Sadek, Esquire
Pa Bar No.: 90488
SADEK AND COOPER
1315 Walnut Street, Suite 502
Philadelphia, PA 19107

(Counsel for Debtor, Allison Brunner)

TABLE OF CONTENTS

STATEMENT OF JURISDICTION..............................................3

ORDERS/ DETERMINATIONS IN QUESTION.............................3

STATEMENT OF QUESTIONS INVOLVED...............................3

PROCEDURAL HISTORY...................................................3-4

STATEMENT OF FACTS....................................................4-5

ARGUMENT......................................................................6-14

CONCLUSION......................................................................14

VERIFICATION....................................................................15

## STATEMENT OF JURISDICTION

This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 157 and 1334. This is a core matter pursuant to 28 U.S.C. Section 157(b). Venue is proper before this Court pursuant to 28 U.S.C. Sections 1408 and 1409. The predicates for the relief requested herein are section 333(a) of the Bankruptcy Code and Bankruptcy Rule 2007.2.

## ORDERS/ DETERMINATIONS IN QUESTION

On or about March 7, 2016 the United States Trustee Represented by Kevin P. Callahan, Esquire filed a Motion for Court Determination whether Debtor is a healthcare business. Oral Argument was held before the Honorable Court on the Trustee's Motion on or about April 27, 2016. The hearing on the Trustee's Motion has been rescheduled for May 25, 2016 and the instant Brief is due to be filed by Debtor's Counsel by May 13, 2016.

## STATEMENT OF QUESTIONS INVOLVED

1. Is the Debtor a "health care business" as defined by 11 US.C. Section 27(A)(B)?

    Suggested Answer: NO

2. If the Debtor is deemed a "health care business," shall the Court appoint a patient care ombudsman under 333(a)(1)?

    Suggested Answer: NO

## PROCEDURAL HISTORY

The Debtor filed her Chapter 7 Bankruptcy Petition on or about February 16, 2016. At the time of filing the Chapter 7 Petition, Debtor's Counsel inadvertently checked the box "Health

Care Business" on page four of the Voluntary Petition. On February 26, 2016, after realizing the potential consequences of the incorrect designation, Debtor's Counsel filed an Expedited Motion to Allow Permission to remove the health care business designation. Said Motion was withdrawn from the Docket on March 1, 2016 and an Amended Voluntary Petition removing the Healthcare Business designation was filed by Debtor's Counsel on March 2, 2016.

On or about March 7, 2016 the United States Trustee Represented by Kevin P. Callahan, Esquire filed a Motion for Court Determination whether Debtor is a healthcare business. Oral Argument was held before the Honorable Court on the Trustee's Motion on or about April 27, 2016. The hearing on the Trustee's Motion has been rescheduled for May 25, 2016 and the instant Brief is due to be filed by Debtor's Counsel by May 13, 2016.

## STATEMENT OF FACTS

The Debtor, Allison Brunner, commenced her business, Allison Brunner, LCSW, as a sole practitioner in September, 2014. The Debtor's practice involves mental therapy and consists of Somatic Psychotherapy, Psychospiritual Healing and Energy Healing. The Debtor focuses her practice in assisting people with depression, anxiety disorders and low self-esteem. The Debtor received her Master's Degree in Social Work (MSW) from Temple University in 2009 and became a Licensed Social Worker (LCSW) in 2014 by the Commonwealth of Pennsylvania.

The Debtor does not prescribe any medications and is not licensed to do so by the Commonwealth of Pennsylvania. The Debtor practices mental health from one location located at 1518 Walnut Street, Suite 901, Philadelphia, PA 19102. The Debtor's office measures approximately 10 feet by 10 feet and has a separate shared waiting area with two chairs. The Debtor sees one client at a time for 50 minute intervals and does not offer or have the facilities to offer in-patient care.

In 2007 the Debtor's father had a stroke and has been deemed disabled ever since. After the stroke and for in excess of one year, the Debtor provided financial assistance to her father for basic living expenses including food and clothing.

In 2010, the Debtor unfortunately had her own health issues and was terminated from two full time employment positions and without health insurance. The Debtor was unable to work for a period of one year due to her health issues. In 2011, the Debtor returned to work on a part-time basis and was not able to afford her regular monthly living expenses plus payment(s) to her creditors.

The unsecured debts listed in Schedule "F" which precipitated the Debtor's Chapter 7 Bankruptcy filing were all incurred prior to the Debtor starting her business. Since the commencement of Allison Brunner, LCSW, in September, 2014, the Debtor has not incurred any new debt.

The Debtor's practice is regulated by the Association of Social Work Boards (ASWB) and Chapter 49 of the Pa. Code relating to State Board of Social Workers, Marriage and Family Therapists and Professional Counselors. The Debtor provides all clients with contact information for the ASWB in the event there is any dissatisfaction with her services that may not be resolved between the Debtor and the client directly.

The subject Bankruptcy was filed on February 16, 2016 in the United States District Court for the Eastern District of Pennsylvania and assigned case number and assigned to the Honorable Magdeline D. Coleman. The Chapter 7 Bankruptcy was filed for the purpose of obtaining a discharge on the unsecured dischargeable creditors listed in Schedule "F" of the Debtor's Bankruptcy Petition.

# ARGUMENT

1. <u>**The Debtor is not a health care business as defined under 11 U.S.C. Section 101(27A)(A) and (B)**</u>

Under 11 U.S.C. Section 333(a)(1), if the Debtor is deemed a health care business "the court shall ...the appointment of an ombudsman to monitor the quality of patient care and to represent the interests of patients of the health care business unless the court finds that the appointment of such ombudsman is not necessary for the protection of patients under the specific facts of the case."

Subsection "A" of Section 101(27A) of the Bankruptcy Code defines a "health care business" as "any public or private entity (without regard to whether that entity is organized for profit or not for profit) that is primarily engaged in offering the general public for (i) the diagnosis or treatment of injury, deformity, or disease; and (ii) surgical, drug treatment, psychiatric, or obstetric care; <u>and</u>"

Subsection "B" of Section 101(27A) of the Bankruptcy Code provides a list of institutions included within the definition of a "health care business" as follows:

(B) includes-
   (i) any –
      (I)     general or specialized hospital;
      (II)    ancillary ambulatory, emergency, or surgical treatment facility;
      (III)   hospice;
      (IV)   home health agency; and
      (V)    other health care institution that is similar to an entity referred to in subclause (I), (II), (III), (IV); and
   (ii)   any long term care facility including any-
      (I)     skilled nursing facility;
      (II)    intermediate care facility;
      (III)   assisted living facility;
      (IV)   home for the aged;
      (V)    domiciliary care facility; and

(VI)    health care institution that is related to a facility referred to in subclause (I), (II), (III), (IV), or (V), if that institution is primarily engaged in offering room, board, laundry or personal assistance with activities of daily living and incidentals of daily living.

"It is important to note the subsections of § 101(27A)(A) and of subsection (B) are connected by the conjunctive. Thus a debtor who is a "health care business" must meet every requirement under both subsections for a patient care ombudsman to be appointed." In re William L. Saber, M.D., P.C., 369 B.R. 631, 636 (Bankr.D.Colo. 2007) citing In re Anne C. Banes, D.D.S. P.L.L.C., 355 B.R. 532, 534-35 (Bankr. M.D.N.C. 2006); see also In re 7-Hills Radiology, LLC, 350 B.R. 902, 905 (Bankr.D.Nev. 2006).

Statutes are construed according to their plain language unless there is apparent legislative intent to the contrary. In re Abdul Muhaimin, 343 B.R. 159, 167 (Bankr.D.MD. 2006) quoting, Williams v. U.S. Merit Systems Protection Bd., 15 F. 3d 46, 49 (4th Cir. 1994). Congress utilized the conjunctive "and" to connect all sections of 101(27A). The choice of the word "and" in statutory language should generally be given its ordinary conjunctive meaning. citing In re Anne C. Banes, D.D.S. P.L.L.C., 355 B.R. 532, 534 (Bankr. M.D.N.C. 2006).

"As a result, these cases engraft a fifth element onto the Section 101(27A) analysis, requiring that a debtor's business involve direct and ongoing contact with patients' that provide[s] patients with 'shelter and sustenance' in addition to medical treatment." In re Smiley Dental Arlington, PLLC, 503 B.R. 680, 686 (Bankr. N.D.TX 2013) citing, In re Banes, 355 B.R. at 535 quoting, In re 7-Hills Radiology, 350 B.R. at 904. "That is the almost inescapable conclusion one draws from the focus on institutions in which patients are housed and treated." In re 7-Hills Radiology, 350 B.R. at 905.

The Court in In Re Medical Associates of Pinellas, 360 B.R. 356, 360 (Bankr.M.D. FL 2007) further explained that each of the examples included in Subsection "B" of Section

7

101(27A) describe businesses where patients reside, receive emergency ambulatory or surgical treatment, or receive in-home or inpatient care and clearly includes long term health care facilities such as hospitals or nursing homes.

"The examples included in subparagraph (B) appear to contemplate something more than a doctor's office..." In Re Medical Associates of Pinellas, 360 B.R. 356, 361 (Bankr.M.D. FL 2007).

The Pinellas Court by way of statutory interpretation reiterated Section 101(27A) into a four prong test in order for a Debtor to qualify as a "health care business:"

1. The debtor must be a public or private entity;
2. The debtor must be primarily engaged in offering to the general public facilities and services;
3. The facilities and services must be offered to the public for the diagnosis or treatment of injury, deformity or disease; and
4. The facilities and services must be offered to the public for surgical care, drug treatment, psychiatric care or obstetric care.

See In Re Medical Associates of Pinellas, 360 B.R. 356, 359 (Bankr.M.D. FL 2007).

The Debtor in the instant matter does not meet the second, third or fourth prong of the four prong test listed herein-above. The Debtor in the instant matter does not provide facilities where patients receive shelter and sustenance in addition to medical care such as, emergency ambulatory treatment or surgical treatment, or receive in home or outpatient care.

The Debtor operates her mental health practice from a 100 square foot office in a shared suite and sees one patient at a time for a fifty (50) minute duration. The Debtor does not provide

direct and ongoing contact with her patients in addition to the allocated fifty (50) minutes reserved for treatment. Accordingly, the Debtor is not similar to any of the entities listed in Section 101(27A)(B) of the Bankruptcy Code.

Moreover, the Debtor does prescribe not nor is she licensed to prescribe medication of any kind to her clients. Although the Debtor is engaged in treating of "disease" including anxiety, depression and low self-esteem; the examples of institutions listed in 11 U.S.C. Section 101(27A)(B) involve providing medical treatment including prescribing or administering medicine.

Due to the lack of facilities as listed in prong two, (2) three (3) and four (4) of the four prong test utilized by the Pinellas Court the Debtor shall not be deemed a health care business. Lastly, due to the limited size and scope of the Debtor's practice, the Debtor is not a listed entity or even similar to a listed entity as enumerated in 11 U.S.C. Section 101(27A)(B).

2. **Even if the Debtor's Business is deemed a health care business, a patient care ombudsman is not required in the instant matter.**

Section 333(a)(1) of the Bankruptcy Code provides: "If the debtor…is a health care business, the court shall order, not later than 30 days after the commencement of the case, the appointment of an ombudsman to monitor the quality of patient care and to represent the interests of the patients of the health care business unless the court finds the appointment of such ombudsman is not necessary for the protection of patients under the specific facts of the case." 11 U.S.C. Section 333(a)(1).

Pursuant to 333(a)(2)(a) AND 333(b) of the Bankruptcy Code, if appointed, and ombudsman must be disinterested and must:

(1) monitor the quality of patient care provided to patients of the debtor, to the extent necessary under the circumstances, including interviewing patients and physicians.

(2) not later than 60 days after the date of appointment, and not less frequently at 6-day intervals thereafter, report to the court after notice to the parties in interest, at a hearing or in writing, regarding the quality of patient care provided to patients of the Debtor; and

(3) if such ombudsman determines that the quality of patient care provided to the patients of the debtor is declining significantly or is otherwise being materially compromised, file with the court a motion or a written report, with notice to the parties in interest immediately upon making such determination.

The Court in In re Valley Health Sys., 381 B.R. 756, 762 (Bankr.C.D. Cal. 2008) listed four factors to be considered when a court is evaluating whether to appoint a patient care ombudsman:

(1) the high quality of the debtor's existing patient care;

(2) the debtor's financial ability to maintain high quality patient care;

(3) the existence of an internal ombudsman program to protect the rights of patients, and/or

(4) the level of monitoring and oversight by federal, state, local or professional association programs which renders the services of the ombudsman redundant.

In In re Valley Health System, the court declined to appoint a patient care ombudsman because (a) the debtor's bankruptcy was "due to the burden of servicing the Bonds and problems stemming from certain limitations inherent in the District's contractual captitation relationships," (b) The Debtor was subject to substantial monitoring be a variety of federal and

state regulatory agencies and independent accreditation associations, (c) There were no deficiencies in patient care, and (d) The Debtor had implemented internal quality controls and procedures for monitoring patient care and the patients had to report any concerns to regulatory agencies. In re Valley Health Sys., 381 B.R. 756, 761-763 (Bankr.C.D. Cal. 2008).

In In re North Shore Hematology, 400 B.R. 12, 13 (Bankr. E.D.N.Y. 2008) the court declined to appoint a patient care ombudsman for the physician owned healthcare practice which provided cancer treatment and blood disorder related services based on (a) the Debtor's internal monitoring, (b) sufficient in house complaint resolution program, (c) the small number of Complaints by patients over the previous 14 months prior to filing, and (d) the oversight of regulatory agencies, including the Department of Health.

In In re Total Woman Healthcare Ctr., P.C., No.: 06-52000, 2006 WL 3708164 at 1-3 (Bankr.M.D.Ga. 2006) the court declined to appoint a patient care ombudsman for the medical practice specializing in obstetrics and gynecology. The court was "not persuaded that the appointment of an ombudsman is necessary for the protection of patients." The court's decision was based on (a) patient care has not been adversely affected by the bankruptcy filing, (b) the Debtor's obligations do not appear to arise from deficient patient care (c) the physician understood her obligation to maintain patient records and to provide copies of the records to patients who decide to see another physician.

Section 333(b)(1) of the Bankruptcy code states that an ombudsman must…monitor the quality of patient care…including interviewing patients and physicians." A Physician is defined by 1 Pa.C.S. Section 1991 as "an individual licensed under the laws of this Commonwealth to engage in the practice of medicine and surgery in all of its branches…or in the practice of

osteopathy or osteopathic surgery...." The Debtor is a licensed social worker and does not engage in the practice of medicine, surgery, osteopathy or osteopathic surgery.

In the case at bar, the Debtor is a sole practitioner and a licensed social worker. The Debtor is in compliance with her licensing, continuing education and ethical requirements, including record keeping (retaining files for the last 5 years from the date of last entry) mandated by Chapter 49 of the Pennsylvania Code relating to State Board of Social Workers, Marriage and Family Therapists and Professional Counselors.

Because the Debtor is a sole practitioner, she can directly monitor her patient care and patient satisfaction on an ongoing and daily basis. If there is dissatisfaction with patient care that cannot be resolved directly with the Debtor, any issues can be directed to the Association of Social Workers Boards (ASWB). "The ASWB is the only non-profit organization dedicated to social work regulation." ASWB at https://www.aswb.org/about/ (last visited May 9, 2016). Further, the Debtor provides all her patients with the contact information for the ASWB. Appointing a patient care ombudsman would be duplicative due to the ongoing oversight which the Debtor is actively engaged in on an ongoing basis.

The Debtor has no pending investigations filed against her stemming from her practice and there are no allegations of deficiencies in patient or client care.

The unsecured creditors listed in Schedule "F" which precipitated the Debtor's Chapter 7 Bankruptcy filing were all incurred prior to the Debtor starting her business and stemmed from health issues and periods of unemployment and underemployment. Since the commencement of Allison Brunner, LCSW, in September, 2014 the Debtor has not incurred any new debt

personally or on behalf of her business. Post-bankruptcy filing the Debtor has been able to meet her monthly business and personal expenses in a regular and timely manner.

The patient care given by the Debtor has not been adversely affected by the Debtor's Chapter 7 Bankruptcy filing. The Debtor has not lost any time treating her clients and there has been no adverse effect on client care due at any time relevant hereto due to the instant Chapter 7 Bankruptcy filing.

"The Confidentiality of mental health records is the sine qua non of effective treatment. Its purpose is to enable effective treatment of those with mental illness by encouraging patients to offer information about themselves freely and without suffering from fear of disclosure of one's most intimate expressions to others and the mistrust that the possibility of disclosure would engender." Report No. 45, Group for the advancement of Psychiatry 92 (1960), quoted in *Advisory Committee on the Federal Rules of Evidence*, 56 F.R.D. 183, 241-42 (1973); Commonwealth ex rel. Platt v. Platt, 266 Pa. Super 276, 404 A.2d 410, 425 (1979).

Under 11 U.S.C. Section 333(b)(1) An ombudsman appointed under subsection(a) shall monitor the quality of patient care …including interviewing patients and physicians. Although the appointment of an ombudsman is to monitor the quality of patient care, such an appointment may foreseeably impede the Debtor's client's ability to speak freely and impair the one-on-one mental health relationship and treatment that the Debtor has worked diligently to create with her clients.

Per the Debtor's Schedule "I" filed with the Voluntary Petition on February 16, 2016 and examined by the Chapter 7 Trustee on March 16, 2016 at the 341 Meeting of Creditors, the Debtor's monthly income averages $2,000.00 per month. (On or about March 17, 2016 the

Chapter 7 Trustee filed a Report of No Distribution in the instant matter). The Debtor's income is derived solely from the operation of her business and the Debtor has extremely limited disposable income on a regular and monthly basis. Due to the Debtor's limited monthly disposable income she is not in the position to bear the expense of a patient care ombudsman.

Lastly, if this Honorable Court finds that (1) the Debtor is deemed a healthcare business and (2) that an appointment of a patient care ombudsman is necessitated, such precedent would open the doors of a health care business coupled with foreseeably increasing the appointment(s) of a patient care ombudsman.

## CONCLUSION

It is respectfully requested based on the Debtor's Brief and its contents; that the Debtor is found not to be deemed a health care business under Section 101(27)(A) of the Bankruptcy Code. Further, it is respectfully requested that even if the Debtor is deemed to be a health care business by this Honorable Court that the appointment of a patient care ombudsman is ruled not necessary for the protection of the Debtor's patients.

Respectfully Submitted,

*/s/Brad J. Sadek, Esquire*
BY: Brad J. Sadek, Esquire
Pa Bar No.: 90488
SADEK AND COOPER
1315 Walnut Street, Suite 502
Philadelphia, PA 19107

(Counsel for Debtor, Allison Brunner)

May 13, 2016

**VERIFICATION**

I, Allison Brunner, the Debtor in the instant matter, verify that the statements made in this Initial Brief are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. Section 4904, relating to unsworn falsification to authorities.

Date: May 9, 2016

_Allison Brunner_
Allison Brunner